# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Checker Cab Philadelphia, et al,**<br>　　　**Plaintiffs,**<br><br>　　v.<br><br>**The Philadelphia Parking Authority and Vincent Fenerty,**<br>　　　**Defendants.** | **CIVIL ACTION**<br><br><br>**NO. 16-4669** |

## MEMORANDUM RE: DEFENDANT FENERTY'S MOTION FOR SUMMARY JUDGMENT

Baylson, J.                                                                                               March  12  , 2018

## I.     Introduction

In this action, Philadelphia taxicab companies assert that the governmental agency responsible for regulating taxicabs, Defendant Philadelphia Parking Authority ("PPA") and its former executive director, Defendant Vincent Fenerty, violated their rights under the Equal Protection Clause and Takings Clause of the U.S. Constitution for failing to regulate so-called "Transportation Network Companies" ("TNCs"), such as Uber and Lyft, before their statewide legalization.

On January 29, 2018, this Court granted summary judgment as to PPA only, and allowed the parties to submit additional briefing on the issue of whether Fenerty was entitled to qualified immunity. With briefing now complete, the Court hereby **GRANTS** the motions for summary judgment as to Fenerty.

## II.    Background and Procedural History

The background of this case, as well as its lengthy procedural history, was detailed in this Court's memorandum of January 29, 2018. (Mem. Granting PPA Mot. for Summ. J., ECF 173.)

A brief review of the legal theories asserted by the parties and the proceedings at summary judgment is necessary to resolve whether Fenerty is entitled to qualified immunity.

This lawsuit was initially filed by a group of medallion-holding Philadelphia taxicab companies (collectively referred to as "Checker"), which asserted that by failing to regulate TNCs prior to their statewide legalization, PPA and Fenerty violated the U.S. Constitution in two ways:

First, that PPA's failure to apply taxicab regulations to or otherwise regulate TNCs amounted to disparate treatment of similarly situated for-hire transportation and selective enforcement of taxicab violations in violation of the Equal Protection Clause; and

Second, that the diminution in value of taxi medallions caused by the failure to regulate TNCs constituted a taking of Checker's property without just compensation in violation of the Fifth and Fourteenth Amendments.

Intervenor Germantown Cab Company ("Germantown"; together with Checker, the "Taxi Companies"), a taxicab company that does not hold taxi medallions, asserted, like Checker, that PPA's failure to regulate TNCs constituted selective enforcement of taxicab regulations in violation of Germantown's right to equal protection of the laws.

Defendants PPA and Fenerty jointly filed two motions for summary judgment: one motion for summary judgment as to Checker, and a separate summary judgment motion as to Germantown. After briefing on the summary judgment motions was complete, the Court held oral argument on January 24, 2018. The Court issued a ruling on January 29, 2018 in which the Court found that no genuine issue of material fact existed on the Taxi Companies' selective enforcement and disparate treatment equal protection theories, or on Checker's takings claim. (Id.)

However, the Court granted summary judgment as to PPA only, and did not make any ruling as to Fenerty. (Order Granting PPA Mot. for Summ. J., ECF 174.) The Court deferred ruling on whether Fenerty was entitled either to summary judgment, or to a defense of qualified immunity based on his actions. The Court opined that it "believe[d] that under settled Supreme Court and Third Circuit law, that Mr. Fenerty has a very strong legal argument that he is entitled to qualified immunity." (Mem. Granting PPA Mot. for Summ. J. at 60, ECF 173.) The Court explained:

> First, because the Court is rejecting the Taxi Companies' claims of constitutional violations, the Court believes it is likely proper to make the same conclusion as to Mr. Fenerty. Alternatively, given the extensive discussion of law in this Memorandum and the very vigorous disputes over the applicable law, the Court is inclined to find that the applicable law was not "clearly established," at least in this factual context of PPA regulations and practices, emerging TNCs and their relationship to established taxicab companies. This Court held in Bradley v. West Chester University, 26 F. Supp. 3d 435 (E.D. Pa. 2017), aff'd on other grounds, No. 17-1588 (3d Cir. Jan. 26, 2018), a defendant is entitled to qualified immunity even if there is a factual dispute as to whether his conduct violated constitutional rights, if the right asserted was not "clearly established." The extended discussion in Bradley would equally apply to this case.

(Id.) Because the issue had not been briefed, the Court decided to "give the Taxi Companies an opportunity to present facts the Taxi Companies still believe warrant the Court denying the Fenerty motion for qualified immunity, and by filing a brief memorandum of law citing to matters already in the record." (Id.)

Checker filed a memorandum of law regarding the applicability of qualified immunity to Defendant Fenerty on February 9, 2018. (ECF 175.) Germantown filed a short statement joining Checker's memorandum. (ECF 176.) Fenerty filed a response on February 16, 2018. (ECF 177.)

3

## IV. Legal Standard

Summary judgment is appropriate if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. Summary judgment is appropriate if the non-moving party fails to rebut the motion by making a factual showing "that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## V. Discussion

### A. Principles of Qualified Immunity

For decades, the Supreme Court has held that "the doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). See also Taylor v. Barkes, 135 S. Ct. 2042,

2044 (2015) (stating that "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct"). The Supreme Court has explained that qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). In Pearson, the Supreme Court explained that "[q]ualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." 555 U.S. at 231.

The Supreme Court has described the test for qualified immunity as a "two-pronged inquiry." Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014). The first prong concerns whether the "conduct" of a government official "violated a [federal] right [.]" Id. (alteration original). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." Id. at 1866. Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis" to tackle first. Pearson, 555 U.S. at 236.

Because a plaintiff must satisfy both prongs of the qualified immunity framework, defendants often make alternative arguments to avoid liability, as Fenerty does in his supplemental brief. Defendants asserting a qualified immunity defense typically first argue that they committed no constitutional violation, and then argue that even if they had violated the constitution, they are entitled to qualified immunity because the right asserted was not clearly

5

established.  See, e.g., Plumhoff v. Rickard, 134 S. Ct. 2012 (2014) (accepting police officers' alternative arguments that a fatal shooting after a high-speed chase did not constitute excessive use of force in violation of the Fourth Amendment and even if it had, the officers would have been entitled to qualified immunity).

The Supreme Court has further clarified that a "clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right" such that "existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted) (warning courts "not to define clearly established law at a high level of generality").  "The dispositive question is whether the violative nature of *particular* conduct is clearly established," an inquiry that "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. (finding that police officer in excessive use of force case was entitled to qualified immunity where the shooting took place against a "hazy legal backdrop").  Courts are to consider the state of the law at the time of the violation; "later decided cases [can]…not give fair notice" to a defendant as to the illegality of his conduct. Plumhoff, 134 S. Ct. at 2023 (reviewing case law prior to date of alleged excessive use of force and declining to consider subsequent cases).  In this way, the Third Circuit has described qualified immunity analysis as "look[ing] through the rearview mirror, not the windshield." Williams v. Sec'y Pennsylvania Dep't of Corr., 848 F.3d 549, 570 (3d Cir. 2017) (defendants were entitled to qualified immunity where right asserted was not clearly established at the time of the alleged violations in the lawsuit, but had become clearly established by the time of the Third Circuit's decision).

When evaluating claims that the right asserted was clearly established, courts in the Third Circuit "look first for applicable Supreme Court precedent," but "[i]f none exists," courts then "consider whether there is a case of controlling authority in our jurisdiction or a robust consensus of cases of persuasive authority in the Courts of Appeals [that] could clearly establish a right for purposes of qualified immunity." Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017) (quotations and citations omitted) (members of school board who banned disruptive meeting participant were entitled to qualified immunity where "given the state of the law at the time of the Board's ban there was, at best, disagreement in the Courts of Appeals as to the existence of a clearly established right to participate in school board meetings despite engaging in a pattern of threatening and disruptive behavior").

Thus, at the summary judgment stage, if the right asserted is not clearly established, it is possible for a defendant to be entitled to qualified immunity—and to a grant of summary judgment—even if there is a factual dispute as to whether the defendant's conduct violated constitutional rights. Such was the case in this Court's decision in Bradley v. W. Chester Univ. of Pennsylvania State Sys. of Higher Educ., 226 F. Supp. 3d 435 (E.D. Pa. 2017), aff'd on other grounds, 880 F.3d 643 (3d Cir. 2018).

### B. Contentions of the Parties

#### 1. The Taxi Companies

The Taxi Companies first imply that PPA—which is no longer a party to this case—must file a separate motion for summary judgment on the issue of qualified immunity:

> To date, Defendants, Philadelphia Parking Authority, et al. ("PPA") have not moved for summary judgment on its claim that former Executive Director, Vincent J. Fenerty ("Fenerty") is entitled to qualified immunity. Absent a pending motion for summary judgment on this issue, the PPA must first move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure and establish that it is entitled to a judgment as a matter of law because there are no genuine disputes of material facts at issue.

(Taxi Companies' Joint Mem. Regarding Qualified Immunity at 1, ECF 175.)

Turning to the qualified immunity analysis itself, the Taxi Companies assert that Fenerty engaged in an "abuse of power" that is "not entitled to immunity." (Id. at 2.) The Taxi Companies argue, as they did in their prior summary judgment briefing, that Fenerty stated inconsistent positions regarding TNCs, and "failed to engage in any meaningful action to remedy" what the Taxi Companies saw as a disparity in regulatory burdens on taxicabs and TNCs prior to the enactment of statewide TNCs—inaction that purportedly led to a decline in taxi medallion values. (Id. at 2-4.)

The Taxi Companies also argue, more generally, that Fenerty is not entitled to qualified immunity because "Fenerty's tenure as Executive Director of the PPA was marred in corruption and caused the public to doubt whether the PPA could even function in its current design." (Id. at 3.) Specifically, the Taxi Companies rely on the negative findings of two PPA audit reports regarding various aspects of Fenerty's tenure as PPA executive director, such as financial irregularities at PPA and issues with PPA's institutional culture. (Id. at 4-6.) With respect to both lines of argument, the Taxi Companies conclude that "Fenerty is not entitled to a defense of qualified immunity because he abused his power as Executive Director of the PPA for his own benefit and failed to perform his duties as a public official in a reasonable manner." (Id. at 6.)

### 2. Fenerty

Fenerty responds that this Court rejected the Taxi Companies' Equal Protection and Takings Clause challenges as to PPA, and because Checker asserts no further facts in its memorandum showing that Fenerty violated the Taxi Companies' constitutional rights—and the Taxi Companies brought no claims as to Fenerty alone in their respective Complaints—the Court

should consider the issue of qualified immunity to be moot. (Fenerty Mem. Regarding Qualified Immunity at 1-3, ECF 177.)

In the alternative, Fenerty argues, the law regarding the constitutional obligations of regulators toward TNCs was not "clearly established" at the time of the events at issue in this lawsuit. (Id. at 3-9.) Finally, Fenerty takes exception to Checker's reliance on the audit reports, which made no findings as to PPA's treatment of TNCs, as irrelevant—and whose inclusion in the record was already rejected by this Court. (Id. at 9.)

### C. Whether Fenerty Is Entitled to Summary Judgment

In its memorandum granting summary judgement as to PPA, this Court expressed its tentative belief that Fenerty likely would be entitled to qualified immunity, but wanted to give the parties an opportunity to brief the issues, specifically by allowing the Taxi Companies "an opportunity to present facts the Taxi Companies still believe warrant the Court denying the Fenerty motion for qualified immunity," and to file a brief, supporting memorandum of law "citing to matters already in the record." (Mem. Granting PPA Mot. for Summ. J. at 60, ECF 173.)

The requested briefing has confirmed the Court's belief. The Taxi Companies have pointed to no facts in the voluminous record of this case warranting denial of summary judgment as to Fenerty, and have marshaled no apposite case law supporting their position that a qualified immunity defense should be unavailable to Fenerty.

As discussed above, "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Taylor, 135 S. Ct. at 2044. As the Third Circuit put it, "[w]hen a qualified immunity defense is asserted, a court must determine (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right, and (2)

whether that right was clearly established at the time of the injury." Mann v. Palmerton Area Sch. Dist., 872 F.3d 165, 170 (3d Cir. 2017). Thus, the Taxi Companies cannot obtain damages from Fenerty unless he (1) violated a statutory or constitutional right of the Taxicab Companies, and (2) that right was clearly established at the time of the events in this lawsuit.

The parties' supplemental briefing has now satisfied this Court that Fenerty is entitled to summary judgment: Fenerty did not violate the constitutional rights of the Taxi Companies in the course of PPA's failure to regulate TNCs more aggressively, and even if he had, he would be entitled to a defense of qualified immunity. Fenerty is therefore entitled to summary judgment.

In its memorandum granting summary judgment to PPA, the Court found that PPA had not violated the constitutional rights of the Taxi Companies under the Equal Protection Clause or the Takings Clause of the U.S. Constitution. As Fenerty points out in his supplemental brief, the Taxi Companies' supplemental briefs have not shown any record evidence whatsoever raising a factual issue that Fenerty—separately from PPA—violated the rights of the Taxi Companies to equal protection of the laws or Checker's right to be protected from takings of its taxi medallions for public use without just compensation.

Moreover, even if Fenerty had violated the Fifth and/or Fourteenth Amendment rights of the Taxi Companies, the Taxi Companies have provided no case law that showing that the particular rights they assert were clearly established at the time of Fenerty's challenged actions. The Court, which is obliged by Mullenix and other cases to construe the Taxi Companies' asserted rights at low level of generality, considers the Taxi Companies to be asserting two rights that Fenerty allegedly violated: first, that the Taxi Companies are entitled under the Equal Protection Clause to aggressive regulatory or enforcement action by the executive director of a taxicab regulatory agency against unlicensed competitors; and, second, that holders of taxi

10

medallions have a right under the Takings Clause both to the value of the medallions they hold and to a stable credit market in taxi medallions.

As the Court discussed in its review of taxicab challenges in its prior memorandum granting summary judgment to PPA, theories comparable to those advanced by the Taxi Companies in this action have been largely rejected by courts. (Mem. Granting PPA Mot. for Summ. J. at 33-56, ECF 173.) The closest the Taxi Companies come to showing any case law whatsoever in which a court found for plaintiff taxicab companies against a regulator on similar facts and legal theories during the relevant period in this lawsuit is Boston Taxi Owners Ass'n, Inc. v. City of Boston, 180 F. Supp. 3d 108 (D. Mass. 2016), in which the district court found that the plaintiff taxicab companies had stated a claim for an equal protection violation on a failure-to-regulate theory comparable to that advanced by the Taxi Companies in this litigation.[1] As discussed in this Court's prior memorandum granting summary judgment to PPA, that court actually dismissed the plaintiffs' claim for an unconstitutional taking of their medallions, which had fallen in value; thus, no court has ever found that a governmental taxicab regulator has effected an unconstitutional regulatory taking based a drop in medallion values. Id.

A lone decision of a district court is not the "applicable Supreme Court precedent," controlling Third Circuit authority, or "robust consensus of cases of persuasive authority in the Courts of Appeals" required by the Third Circuit to find a right to be clearly established. See Barna, 877 F.3d at 142 (3d Cir. 2017). Thus, even if Fenerty had violated the rights of the Taxi Companies under the Equal Protection Clause and the Takings Clause of the U.S. Constitution—

---

[1] Baldwin v. Town of West Tisbury, No. 16-CV-10736-ADB, 2017 WL 3940932 (D. Mass. Sept. 7, 2017), which likewise found that a plaintiff taxi owner had stated a claim on an equal protection clause failure-to-regulate theory, was decided after the relevant period in this lawsuit.

11

or if there were a factual debate as to whether he had done so—Fenerty is entitled to the defense of qualified immunity.

Finally, the Taxi Companies provide no support for their assertion that PPA—which is no longer party to this lawsuit—must file a separate motion for summary judgment on the issue of qualified immunity on behalf of its former co-defendant, Vincent Fenerty, whom the Taxi Companies named as a Defendant in their respective Complaints. Fenerty filed a joint motion with PPA as to the constitutional claims asserted by the Taxi Companies, which is still pending. Qualified immunity is a defense often raised at the summary judgment stage, and is often asserted as the grounds entitling governmental defendants to summary judgment. See, e.g., Williams, 848 F.3d at 553 (affirming district court's grant of summary judgment to defendant prison officials because the prison officials were entitled to qualified immunity). It is perfectly appropriate to grant summary judgment to Fenerty on the pending summary judgment motion.

## VI. Conclusion

Defendant Vincent Fenerty's Motions for Summary Judgment (ECF 147 and 148) are hereby **GRANTED**. An appropriate order follows.

O:\CIVIL 16\16-4669 Checker Cab v PPA\16cv4669 Checker Cab Fenerty MSJ Memo.docx